**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION**

| | |
|---|---|
| NEF ASSIGNMENT CORPORATION, : :  Plaintiff, : : v. : : NORTHSIDE VILLAGE : PARTNERSHIP GP, LLC, et al., :  Defendants. : | CIVIL ACTION NO. 1:11-CV-4074-RWS |

## ORDER

This matter is before the Court for consideration of the dueling motions for summary judgment filed by the parties, [Docs. 51, 52], as well as Defendants' motion to strike certain of Plaintiff's evidence, [Doc. 59]. After careful consideration of the parties' arguments in light of the controlling law, this Court enters the following Order.

## I. Background

The facts material to this dispute are as follows: Plaintiff is a limited partner in Northside Village Partnership, L.P. (Partnership). Defendants are (1) the general partner (General Partner) in the Partnership and (2) four parties (Guarantors) to a guaranty agreement (Guaranty) pursuant to which, *inter alia*, the Guarantors guarantee the performance of the General Partner with respect to obligations that the General

AO 72A
(Rev.8/82)

Partner has to Plaintiff under the terms of the Amended and Restated Limited Partnership Agreement (LPA).[1]

Section 6.9(d) of the LPA contains language that obligates the General Partner to buy out Plaintiff if certain conditions are met. That language states in relevant part:

> Notwithstanding anything contained herein to the contrary, in the event that . . . (2) Breakeven Operations[2] does not occur within 12 months of the Construction Completion Date, unless the General Partner provides all funds required, over and above the funds available in the Operating Reserve, for all Operating Deficits until Breakeven Operations occurs, . . . [or] (4) proceedings have been commenced, filed or initiated to foreclose the Construction Loan mortgage or permanently enjoin construction of the Project, . . . the General Partner shall purchase the limited partners' respective interests in the Partnership for an amount equal to the sum of all Capital Contributions actually made to the Partnership by the [Plaintiff] plus $50,000 . . . plus all expenses incurred by [Plaintiff] in connection with entering into the Partnership.

[Doc. 51-5 at 53-54].

Plaintiff contends that its capital contribution to the Partnership was $7,093,092.00. Plaintiff further contends that the conditions numbered (2) and (4) in the above-quoted language have come to fruition because "Breakeven Operations" did not occur and because the bank foreclosed on the "Construction Loan." Plaintiff thus

---

[1] One of the four parties to the guaranty, Satish S. Lathi, defaulted and this Court entered judgment against him and in favor of Plaintiff on February 1, 2012. The remaining three guarantors appear jointly with the General Partner.

[2] "Breakeven Operations" is a defined term in the LPA which describes a threshold of financial performance discussed below.

2

asserts that it is entitled to recover from the General Partner (and failing that from the Guarantors) its capital contribution plus $50,000.00 for a total of $7,143,092.00. Defendants counter that none of the events triggering the General Partner's obligation to buy out Plaintiff has occurred. Specifically, Defendants contend that the Construction Loan was not foreclosed. Rather, the "Permanent Loan" under the terms of the LPA was the loan that was foreclosed. Defendants further argue that Plaintiff cannot demonstrate based on the evidence that it has produced that "Breakeven Operations" have not occurred.[3] Also, according to Defendants, even if a triggering event has occurred under LPA § 6.9(d), the Guaranty does not obligate the Guarantors to repurchase Plaintiff's partnership interest on the General Partner's behalf if the General Partner fails to do so.

## **Discussion**

Legal Standards

Federal Rule of Civil Procedure 56 requires that summary judgment be granted "if the movant shows that there is no genuine dispute as to any material fact and the

---

[3] In their motion to strike, [Doc. 59], Defendants assert that this Court should strike the audit report and the statements that Plaintiff relies on in its attempt to demonstrate that Breakeven Operations did not occur. As this Court ultimately determines that Plaintiff's evidence is insufficient to demonstrate this part of its claim, this Court will deny Defendants' motion as moot.

movant is entitled to judgment as a matter of law." "The moving party bears 'the initial responsibility of informing the . . . court of the basis for its motion, and identifying those portions of the [discovery materials] "which it believes demonstrate the absence of a genuine issue of material fact.'" Hickson Corp. v. N. Crossarm Co., 357 F.3d 1256, 1259 (11th Cir. 2004) (quoting Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986) (internal quotations omitted)). Where the moving party makes such a showing, the burden shifts to the non-movant, who must go beyond the pleadings and present affirmative evidence to show that a genuine issue of material fact does exist. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 257 (1986).

Most of the matters at issue in this dispute are entirely questions of contract interpretation under Georgia law.

> The construction of contracts involves three steps. At least initially, construction is a matter of law for the court. First, the trial court must decide whether the language is clear and unambiguous. If it is, the court simply enforces the contract according to its clear terms; the contract alone is looked to for its meaning. Next, if the contract is ambiguous in some respect, the court must apply the rules of contract construction to resolve the ambiguity. Finally, if the ambiguity remains after applying the rules of construction, the issue of what the ambiguous language means and what the parties intended must be resolved by a jury.

Record Town, Inc. v. Sugarloaf Mills Ltd. Partnership of Ga., 687 S.E.2d 640, 642 (2009) (citations and quotations omitted). This Court stresses that the rules of contract

construction apply only if this Court first determines that the language of the contract is ambiguous. Livoti v. Aycock, 590 S.E.2d 159, 164 (Ga. Ct. App. 2003).

Whether Breakeven Operations Occurred (LPA § 6.9(d)(2))

Turning first to the issue of whether the condition in LPA § 6.9(d)(2) has been met, based on the evidence presented, this Court is unable to conclude, as a matter of law, that Breakeven Operations, as that term is defined in the LPA, did or did not, occur. To a fair degree, the parties' arguments on this issue amount to little more than the Plaintiff asserting that Breakeven Operations did not occur and Defendants responding that they did occur without a satisfactory account from either party explaining why.

The definition for Breakeven Operations that appears in the LPA (and in the margin below)[4] is fairly complex and makes reference to matters outside the four

---

[4] According to the LPA,

"Breakeven Operations" means the date upon which (i) at least 95% of the Project's rental Units have been occupied by tenants actually paying rents at monthly rates at least equal to those assumed in the Projections for a period of three consecutive months and (ii) the revenues from the normal operation of the Project received on a cash basis (including all public subsidy payments due and payable at such time but not yet received by the Partnership) for a period of three (3) consecutive months after the Construction Completion, equal or exceed all accrued operational costs of the Project (including, but not limited to, taxes, assessments, replacement reserve deposits) and debt service payments, and a ratable portion of the annual amount (as reasonably estimated by

corners of the LPA. There is no attempt by either party to break the definition down and demonstrate how each element of that definition has or has not been satisfied. Indeed, there is no indication whether the parties agree about what the concept of Breakeven Operations means under the definition, and any effort on the part of this Court to divine on its own what Breakeven Operations means would be merely an exercise in conjecture.

Even assuming that the LPA definition of Breakeven Operations is clear and unambiguous, the evidence falls short of demonstrating that the LPA § 6.9(2) condition has or has not been met. In its effort to demonstrate that Breakeven Operations have not occurred, Plaintiff points to an audit and the deposition statements of two individuals, all three of which make the statement that Breakeven Operations never occurred. The LPA does not define, however, the occurrence or nonoccurrence of Breakeven Operations as being established by statements or audits. Rather, the LPA describes a series of conditions that must be met in order for Breakeven Operations to

---

> the General Partner) of seasonal and/or periodic expenses (such as utilities, maintenance expenses and real estate taxes) which might reasonably be expected to be incurred on an unequal basis during a full annual period of operations, for such a period of three (3) consecutive calendar months on an annualized basis, as evidenced by a certification of the General Partner (with an accompanying unaudited balance sheet of the Partnership) certifying that all trade payables have been satisfied or will be satisfied by cash held by the Partnership on the date of such certification.

occur, and Plaintiff's evidence neither describes the conditions nor demonstrates how they have not been met. Thus, while there is at least some evidence to support Plaintiff's contentions, this Court finds that the evidence is not sufficient to support a finding as a matter of law.

Accordingly, this Court concludes that a genuine question of material fact remains concerning whether Breakeven Operations occurred within 12 months of the Construction Completion Date. Therefore, neither party is entitled to summary judgment on this issue.

Whether the Construction Loan was Foreclosed (LPA § 6.9(d)(4))

Turning to the question of whether the condition in LPA § 6.9(d)(4) has been met – whether "proceedings have been commenced, filed or initiated to foreclose the Construction Loan mortgage" – this Court finds that the language is unambiguous. The definitions in Article 1 of the LPA define the Construction Loan as "that certain loan to the Partnership from the Construction Lender in the original principal amount of $16,700,000 which Loan is evidenced by that certain promissory note dated October 8, 2003." [Doc. 51-5 at 4]. It is undisputed that, by the time of the foreclosure, the Construction Loan had transformed into the "Permanent Loan." However, the LPA defines the "Permanent Loan" as "that certain mortgage loan from the Permanent Lender to the Partnership in the original principal amount not to exceed $16,700,000,

7

AO 72A
(Rev.8/82)

which is the same loan as the Construction Loan." [Id. at 9]. Plaintiff relies on the provision that the Construction Loan and the Permanent Loan are "the same loan" for its contention that a default and foreclosure of the Permanent Loan is the same as a default and foreclosure of the Construction Loan.

While the Permanent Loan may be the same loan as the Construction Loan, Defendants assert that the LPA distinguishes between the two, pointing out that the LPA "refers to or mentions the Permanent Loan, as distinguished from the Construction Loan, no fewer than fifteen (15) times." [Doc. 51 at 9]. Defendants further point to an audit report and to statements made by Plaintiff's representatives where the Permanent Loan and the Construction Loan are treated as different loans.

The Court agrees with Defendants that there is a distinction between the Construction Loan and the Permanent Loan that survives for the present analysis. The critical provision is LPA § 6.9(d)(4) which specifically identifies the Construction Loan as being "evidenced by the promissory note dated October 8, 2003." Though the Permanent Loan may have been the same loan as the Construction Loan, the foreclosure at issue was not on the promissory note dated October 8, 2003. The decision to tie the buy out obligation specifically to the "Construction Loan" is clear and unambiguous. Therefore, the foreclosure at issue did not meet the condition in

LPA § 6.9(d)(4), and this Court concludes that the General Partner is not required to purchase Plaintiff's interest in the partnership under the terms of the LPA § 6.9(d)(4).

<u>The Guarantors' Duties under the Guaranty</u>

Pursuant to the Guaranty, the Guarantors are obligated to deposit with the partnership "such funds as are necessary to ensure full compliance [with the General Partner Obligations]," [Doc. 51-18 at 260], and Plaintiff is empowered to enforce the Guarantors' obligations under the Guaranty, [id. at 262]. "General Partner Obligations" is a defined term which means "all of [the General Partner's] obligations under the [LPA], including, without limitation its Partnership management duties, its development completion and operating deficit guaranties and its guaranties with respect to payment for reduced and delayed tax credits . . . pursuant to § 6.4(f) and § 6.10 of the [LPA]."

The Guarantors argue that, because the definition of "General Partner Obligations" does not specifically mention the buyout provision of LPA § 6.9(d) whereas it does list LPA §§ 6.4(f) and 6.10, the Guaranty covers only the two recited sections. This Court disagrees.

The language of the Guaranty is not ambiguous. It plainly states that the Guaranty covers "all" of the General Partner's obligations in the LPA, "including, without limitation" certain enumerated obligations and sections. The use of "all"

9

followed by phrases like "including but not being limited to" or "including without limitations" is "calculated to give the most expansive application possible." <u>Deep Six, Inc. v. Abernathy</u>, 538 S.E.2d 886, 889 (Ga. Ct. App. 2000). Thus, the Guaranty "does not purport to limit" the scope of the Guarantor obligations to only those two sections listed therein, "but simply enumerates those as . . . specific example[s] of" the types of duties that are covered. <u>Id.</u> "The ['without limitation'] language would be rendered meaningless if [this Court] interpreted the provision" in the manner that the Guarantors urge. <u>Id.</u>; <u>see</u> <u>Altman v. Pilcher</u>, 740 S.E.2d 866, 869 (Ga. Ct. App. 2013) ("It is a cardinal rule of contract construction that a court should, if possible, construe a contract so as not to render any of its provisions meaningless and in a manner that gives effect to all of the contractual terms.") (citation and quotation omitted).

Accordingly, this Court concludes that, to the degree that the General Partner fails in its obligations under § 6.9(d)(2) of the LPA, the Guarantors are obligated under the terms of the Guaranty to assume the General Partner's obligations.

## Conclusion

For the reasons stated,

**IT IS HEREBY ORDERED** that Plaintiff's motion for summary judgment, [Doc. 52] is **DENIED**, and Defendants' motion for summary judgment, [Doc. 51], is **GRANTED, in part**. The General Partner is not obligated to buy out Plaintiff under

AO 72A
(Rev.8/82)

§ 6.9(d)(4) of the LPA. To the degree that the General Partner fails in its obligation, the Guarantors are obligated under the terms of the Guaranty to assume the General Partner's obligation.

**IT IS FURTHER ORDERED** that Defendant's motion to strike, [Doc. 59], is **DENIED** as moot.

The parties shall submit a consolidated proposed pretrial order within thirty (30) days of the entry of this Order.

**IT IS SO ORDERED,** this  15th  day of July, 2013.

_____
**RICHARD W. STORY**
United States District Judge

AO 72A
(Rev.8/82)